**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

FRANK G. LaBARRE, as Executor
of the Estate of ROSLYN L. LaBARRE,
Deceased, and FRANK G. LaBARRE, individually,

                                 **Plaintiff,**

  vs.                                         1:12-CV-1316
                                                  (MAD/TWD)

**WERNER ENTERPRISES, INC., and
FESTUS KIMOTHO NDUNGU,**
                          **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **O'CONNELL AND ARONOWITZ, P.C.**<br>54 State Street<br>9th Floor<br>Albany, New York 12207-2501<br>Attorneys for Plaintiff | **STEPHEN R. COFFEY, ESQ.**<br>**CRISTINA D. COMMISSO, ESQ.**<br>**SCOTT W. ISEMAN, ESQ.**<br>**PAMELA A. NICHOLS, ESQ.** |
| **CARTER, CONBOY, CASE, BLACKMORE,<br>MALONEY & LAIRD, P.C.**<br>20 Corporate Woods Boulevard<br>Albany, New York 12211<br>Attorneys for Defendants | **WILLIAM J. DECAIRE, ESQ.**<br>**BRIAN D. CARR, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 22, 2012, Plaintiff Frank G. LaBarre commenced this action in the Federal District Court for the Northern District of New York, pursuant to 42 U.S.C. § 1332. *See* Dkt. No. 1 at ¶ 11. In the complaint, Plaintiff asserts that Defendants' gross negligence caused the death of his wife, Roslyn L. LaBarre ("Plaintiff's Decedent"). *See id.* at ¶¶ 29, 49, 59. Currently before the Court are Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure and their motion to preclude Plaintiff's experts from testifying pursuant to Rule 702 of the Federal Rules of Evidence. *See* Dkt. No. 52-14 at 2.

## II. BACKGROUND

On the morning of December 1, 2011, Plaintiff's Decedent and Defendant Ndungu were traveling on I-88 near Duanesburg, New York. *See* Dkt. No. 1 at ¶ 24; *see also* Dkt. No. 52-13 at ¶¶ 8, 9. At the time of the accident, the weather was clear, it was light outside, and the roadway was dry. *See* Dkt. No. 52-13 at ¶ 10.

The accident occurred approximately 0.5 miles east of the Sheldon Road overpass with an approximate 0.7 mile line of sight. *See id.* at ¶ 11. Both parties were traveling in the right-hand lane of the two-lane section of I-88 with Defendant Ndungu as the lead vehicle. *See id.* at ¶¶ 8, 9.

On the day of the accident, Defendant Ndungu was employed by Defendant Werner Enterprises and operating a Kenwood tractor trailer. *See id.* at ¶¶ 5, 8. Plaintiff's Decedent was driving a green Honda CRV behind Defendant Ndungu before the accident occurred. *See id.* at ¶ 9; *see also* Dkt. No. 58-22 at ¶ 9.

Non-party witness, Victor Taylor, has stated that he was traveling behind the two parties at the time of the collision. *See* Dkt. No. 52-13 at ¶ 12. Mr. Taylor initially stated that Plaintiff's Decedent was approximately 150 yards in front of him; however, he later agreed that it could have been 150-200 yards. *See id.* at ¶ 13; *see also* Dkt. No. 58-22 at ¶ 13. Thereafter, Mr. Taylor witnessed Plaintiff's Decedent's CRV drive directly into the back of Defendants' trailer. *See* Dkt. No. 52-13. at ¶ 14. Mr. Taylor stated that he did not observe Plaintiff's Decedent brake or change lanes before colliding with Defendant Ndungu's vehicle. *See id.* at ¶ 16; *see also* Dkt. No. 58-22 at ¶ 16. Although Mr. Taylor states that he observed Plaintiff's Decedent collide almost square

with the rear of Defendants' tractor trailer, Plaintiff notes that the police report indicates that Plaintiff's Decedent steered to the left.  *See* Dkt. No. 52-13 at ¶ 15; *see also* Dkt. No. 58-22 at ¶ 15.  Further, Mr. Taylor initially stated that Defendant Ndungu was traveling between 60 and 65 mph and that Plaintiff's Decedent was traveling at approximately 75 to 80 mph.  *See* Dkt. No. 52-13 at ¶ 17.  However, in his deposition Mr. Taylor stated that he did not "have any idea of the speed of the truck."  Dkt. No. 58-22 at ¶ 17.

Plaintiff alleges that Defendant Ndungu's negligent operation of his tractor trailer caused Plaintiff's Decedent's death.  *See* Dkt. No. 1 at ¶¶ 29, 49, 59.  The "14 hour rule[,]" required by federal regulation as well as by Defendant Werner's policies, prohibits commercial drivers from operating a tractor trailer for more than 14 hours without taking a required break.  *See* Dkt. No. 58-22 at ¶¶ 18-20.  Jamie Maus, Defendant Werner's Vice President of Safety and Compliance, stated that at the time of the accident she believed Defendant Ndungu was driving in violation of the "14 hour rule[.]"  *See id.* at ¶ 21; *see also* Dkt. 58-14 at 4, 80; Dkt. No. 59-1 at ¶ 21.  Further, a police inspection of the tractor trailer found that the brake lights and flashing lights on Defendants' tractor trailer were not plugged in.  *See* Dkt. No. 58-22 at ¶ 26.  Plaintiff notes that the lights do not operate when not plugged in.  *See* Dkt. No. 58-22 at ¶ 25.  Plaintiff also argues that Defendant Ndungu was trained by Defendant Werner to inspect the tractor trailers before driving for light functionality, whereas Defendants only contend that a driver *should* inspect their commercial vehicles before driving.  *See id.* at ¶ 27; *see also* Dkt. No. 59-1 at ¶ 27.  Plaintiff contends that, at the time of the accident, the flashers and brake lights on Defendants' trailer were not operating.  *See* Dkt. No. 58-22 at ¶ 28.  Defendants argue that this presumption is based on a post-accident inspection.  *See* Dkt. No. 59-1 at ¶ 28.

Finally, Plaintiff contends that Defendant Ndungu's low rate of speed caused the accident. Between 7:00 a.m. and 7:24 a.m. E.S.T., Defendant Ndungu traveled less than three miles on I-88. *See* Dkt. No. 58-22 at ¶ 29. From 7:17 a.m. until the time of the accident, Defendant Ndungu traveled 1.5 miles. *See id.* at ¶ 30. Additionally, Defendant Ndungu used his Qualcomm system twice within the last four miles, which can only be activated when the tractor trailer is stopped. *See id.* at ¶¶ 34-35.

### III. DISCUSSION

**A.  Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions

4

in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.**     *Prima Facie* **Case of Negligence**

Defendants seek summary judgment in this case on the ground that Plaintiff failed to establish a *prima facie* case of negligence. "As the moving party seeking summary judgment, the defendant bears the burden of making a *prima facie* showing that it neither created the dangerous condition nor had actual or constructive notice of it as a matter of law." *Fairchilds v. J.C. Penney Corp.*, No. 3:10-CV-142, 2011 WL 3300071, *3 (N.D.N.Y. Aug. 2, 2011) (citations omitted). Once the defendant makes out such a showing, "[i]t is then incumbent upon plaintiff[ ] to make an affirmative evidentiary showing that a genuine issue of fact exist[s]." *Maiorano v. Price Chopper Operating Co., Inc.*, 221 A.D.2d 698, 699 (3d Dep't 1995) (citation omitted). A showing by the plaintiff that is based upon "surmise, conjecture, speculation or assertions . . . without probative value" is insufficient to defeat summary judgment. *See id.* (citation omitted).

"It is well established that when a driver approaches another vehicle from the rear, he is bound to maintain a reasonably safe rate of speed, maintain control of his vehicle, and use reasonable care to avoid colliding with the other vehicle." *Barile v. Lazzarini*, 222 A.D.2d 635, 637 (2d Dep't 1995) (citation omitted). "Under New York law, a rear-end collision establishes a *prima facie* case of liability against the following vehicle, thereby requiring the [driver of the following vehicle] to rebut the inference of negligence with a non-negligent explanation for the collision." *Mangual v. Pleas*, No. 02 CIV. 8311, 2004 WL 736817, *4 (S.D.N.Y. Apr. 6, 2004) (citation omitted).

Defendants argue that, assuming Plaintiff's claims are true, as a matter of law they do not rebut the *prima facie* case of liability against Plaintiff's Decedent as the following driver. *See*

5

Dkt. No. 52-14 at 7.  In response, Plaintiff argues that Defendant Ndungu's negligence in driving at a dangerously low rate of speed, failing to inspect the trailer to determine if the warning lights were operable, failing to activate four-way hazards or flashing lights, and violating his driving time requirements all substantially contributed to the accident.  *See* Dkt. No. 58-23 at 9-11.  In support of their motion for summary judgment, Defendants argue that "[t]he driver of the following vehicle can only overcome the inference of negligence by offering a non-negligent explanation such as mechanical failure, unavoidable skidding on wet pavement, or sudden stop of the front vehicle."  *See* Dkt. No. 52-14 at 13.  Defendants then conclude that since Plaintiff has not alleged any of those non-negligent explanations, Plaintiff automatically fails to rebut the *prima facie* liability.  *See id.* at 15.  However, Defendants fail to note that this list of non-negligent explanations is not exhaustive.  In *Mangual v. Pleas*, the court stated that evidence of "any other reasonable explanation" may preclude summary judgment.  *Mangual*, 2004 WL 736817, at \*4.  In fact, in *Mangual*, the court found that the following driver's explanation that the plaintiff's vehicle "suddenly cut into his lane" was sufficient to rebut the inference of negligence and create an issue of fact precluding summary judgment."  *Id.* (citations omitted).  While it is undisputed that Plaintiff's Decedent's CRV struck Defendants' tractor trailer in the rear, "the key question is whether [Plaintiff] adequately rebutted the inference of negligence by presenting sufficient evidence that [Defendant Ndungu's] conduct was negligent and played a part in causing the collision."  *See Hurley v. Izzo*, 248 A.D.2d 674, 676 (2d Dep't 1998).

Further, Defendants state that the slow speed of the front vehicle in a rear-end collision is an insufficient non-negligent explanation for the accident.  *See* Dkt. No. 59 at 10.  In support, Defendants cite *Prive v. Johnson* where plaintiff tractor trailer rear-ended a slow moving tractor trailer on I-81.  *See Prive v. Johnson*, No. 5:04-CV-1024, 2010 WL 3338810, \*4 (N.D.N.Y. Aug.

6

23, 2010). Despite some similarities, including the slow rate of speed at which the lead vehicle was traveling, Defendants fail to note that in *Prive*, the lead driver had his emergency flashers activated and also "used his CB radio to warn trucks driving behind him that he was entering the highway and driving slowly with a flat tire." *Prive*, 2010 WL 3338810, at *3.

Finally, Defendants argue that, even if Defendant Ndungu's hazard or brake lights were not activated, this would not negate Plaintiff's Decedent's *prima facie* negligence. *See* Dkt. No. 52-14 at 9. In support, Defendants cite *Lectora v. Gundrum* where the plaintiff driver hit a parked trailer on the side of I-90 and subsequently filed suit noting that the vehicle on the shoulder was stopped illegally and had no activated warning lights. *See Lectora v. Gundrum*, 225 A.D.2d 738, 738-39 (2d Dep't 1996). There the court held, "assuming, arguendo, that the defendants' vehicle was illegally stopped, and that its warning lights were not on, the defendants' conduct cannot be deemed a proximate cause of this rear-end collision." *Id.* at 739. It is notable, however, that the violation in *Lectora* involved a vehicle stopped illegally on the *shoulder* of a highway, not in the middle of a travel lane. *See id.* In the present case, Plaintiff notes that Plaintiff's Decedent was moving in a travel lane, absent any traffic congestion, when she came upon a Defendant Ndungu traveling well below the speed limit without any indication of an unexpectedly slow speed. *See* Dkt. No. 58-23 at 7. Considering the relevant case law, the Court finds that Plaintiff has provided sufficient evidence to raise questions of fact to rebut the inference of negligence on the part of Plaintiff's Decedent.

**C.    Sole Proximate Cause**

Defendants also argue that Plaintiff's Decedent was the sole proximate cause of the accident as she failed to maintain a safe distance between her vehicle and the vehicle in front of her and also failed to take any action to avoid the collision. *See* Dkt. No. 52-14 at 4-5. "'There

7

can be more than one proximate cause of an accident' . . . and '[g]enerally, it is for the trier of fact to determine the issue of proximate cause.'" *Theodorou v. Perry*, 129 A.D.3d 1056(2d Dep't 2015) (internal citation and other quotation omitted). "However, the issue of proximate cause may be decided as a matter of law where only one conclusion may be drawn from the established facts." *Kalland v. Hungry Harbor Assoc.*, *LLC*, 84 A.D.3d, 889, 889 (2d Dep't 2011) (citation omitted). "[W]here there is any doubt, confusion, or difficulty in deciding whether the issue ought to be decided as a matter of law, the better course is to leave the point for the jury to decide." *White v. Diaz*, 49 A.D.3d 134, 139 (1st Dep't 2008) (internal citations omitted).

Plaintiff's experts opine that Defendant Ndungu's unexpectedly slow rate of speed and lack of warning or brake lights created a situation where Plaintiff's Decedent was unable to effectively estimate Defendant Ndungu's speed and take action before the collision, thus eliminating Plaintiff's Decedent as the sole proximate cause. *See* Dkt. No. 58-23 at 10. In support, Plaintiff cites *Gray v. Delaware Equip. Servs., Inc.*, where the defendants moved for summary judgment after they were rear-ended by the plaintiffs on I-88, while the defendants escorted a crane at an alleged low rate of speed. *See Gray v. Delaware Equip. Servs., Inc.*, 56 A.D.3d 1006, 1006-07 (3d Dep't 2008). There, the court upheld the denial of the defendants' motion for summary judgment because "a question of fact exist[ed] as to whether the warning and tail lights on the escort vehicle were adequate and activated to alert other drivers of the vehicle's slow speed." *Id.* at 1007. In *Gray*, the allegation from the plaintiffs that

> no warning lights were visible prior to the collision and the tail
> lights were very dim . . . was sufficient to create a triable issue of
> fact as to whether the escort vehicle was adequately equipped with
> warning and tail lights and, if so, whether they were functional and
> activated at the time of the accident.

8

*Gray*, 56 A.D.3d at 1007. Here, Defendants argue that the foggy weather conditions in *Gray* make this case distinguishable. *See* Dkt. No. 59 at 8-9. However, in the Court's reading of *Gray*, it is evident that the *Gray* court did not base its holding on the foggy weather conditions ("plaintiffs' claim of foggy weather conditions does not provide a sufficient non-negligent explanation for the accident") but rather on whether the defendants actions were sufficient to alert other vehicles to their *low rate of speed. See Gray*, 56 A.D.3d at 1007. Consistent with *Gray*, Plaintiff has proffered evidence that Defendant Ndungu had "no operable brake lights to warn approaching drivers to slow down" and "no operable four-way hazards or flashing lights to warn approaching drivers that the tractor trailer was traveling slowly." *See* Dkt. No. 58-23 at 11.

Finally, in *Seaton v. Spence*, the court held that a lead vehicle in a rear-end collision may be found negligent when traveling at such a slow speed as to "impede or block the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or because upon a grade or in compliance with law."[1] *See Seaton v. Spence*, 30 Cal. Rptr. 510, 513 (Cal. App. 3d Dist. 1963). In *Seaton*, the plaintiffs contended that "even if [they] were negligent in driving only 10 to 20 miles per hour, [the] negligence was not a contributing or proximate cause of the accident." *Id.* The court rejected the plaintiffs' contention, however, and held that "the question of whether plaintiff's slow driving upon a much traveled main highway constituted negligence which contributed proximately to the accident was one for the jury." *Id.* at 515. The court further noted as follows:

> [i]t is well to point out that U.S. Highway 40 at the place of the accident here involved is a freeway and that it is a matter of common knowledge

---

[1] California vehicle code section 22400 is almost identical to New York's Vehicle and Traffic Law §1181(a) which states that "[n]o person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." N.Y. VTL § 1181(a).

> that the flow of traffic is somewhat faster on freeways. The concept of
> minimum speed laws, comparatively recent in our legislation, was
> undoubtedly prompted by a recognition that slow moving vehicles on
> freeways constitute a hazard to the flow of traffic.

*Seaton*, 30 Cal. Rptr. at 513. In *Seaton,* as here, there was no minimum speed limit in place; however, a slow moving vehicle on a freeway may still in fact be a proximate cause of a rear-end collision. *See id.* Further, the accident in this case occurred on a highway and not on an off-ramp or slow moving roadway, where stops should be reasonably anticipated. This fact distinguishes this case from that of *Jaycox v. Hardesty* and others cited by Defendants. *See Jaycox v. Hardesty*, 305 A.D.2d 720 (3d Dep't 2003) (holding that a following vehicle that rear-ended a garbage truck stopped on a residential road established a *prima facie* case of liability which was not refuted by the following vehicle's unsubstantiated claims that the truck had no rear lights illuminated).

As such, the Court has determined that Plaintiff has raised a sufficient question of fact as to whether Defendant Ndungu's negligence was a proximate cause of the accident and, therefore, summary judgment is denied.

**D.      Motions to Preclude Expert Testimony**

Defendants argue that Plaintiff's experts should be precluded because "they are unreliable and lack sufficient foundation." Dkt. No. 52-14 at 18.

### *1. Legal standards*

Pursuant to Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony,

> [a] witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if: (a) the expert's scientific, technical, or other
> specialized knowledge will help the trier of fact to understand the
> evidence or to determine a fact in issue; (b) the testimony is based
> on sufficient facts or data; (c) the testimony is the product of

10

> reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In reviewing the admissibility of expert testimony, "the district court has a 'gatekeeping' function under Rule 702 — it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). The rule set forth in *Daubert* applies to technical or other specialized knowledge, as well as scientific knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

As the Second Circuit has explained,

> [i]n fulfilling this gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, i.e., whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Next, the district court must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered. In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case. In short, the district court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Amorgianos*, 303 F.3d at 265-66 (internal alterations, quotation marks, and citations omitted).

Furthermore,

> [t]he Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and

11

> the existence and maintenance of standards controlling the
> technique's operation; and (4) whether a particular technique or
> theory has gained general acceptance in the relevant scientific
> community.

*Id.* at 266 (internal quotation marks and citations omitted). However, "[t]hese factors do not constitute . . . a 'definitive checklist or test,'" and "'[t]he inquiry envisioned by Rule 702 is . . . a flexible one.'" *Id.* (quoting *Daubert*, 509 U.S. at 593-94). The court must also consider the fact that "experience in conjunction with other knowledge, skill, training or education . . . [may] provide a sufficient foundation for expert testimony," and "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702, Advisory Committee's Note; *see also Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

"In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos*, 303 F.3d at 266 (citation omitted). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* at 267. "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Id.* "The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Id.* (internal quotation marks and citation omitted). Accordingly, "gaps or inconsistencies" in an expert's reasoning, or arguments

that an expert's conclusions are wrong, "go to the weight of the evidence, not to its admissibility." *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001) (citations omitted).

As the courts and Advisory Committee have made clear, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note; *see also Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995) ("[B]y loosening the strictures on scientific evidence . . . , *Daubert* reinforces the idea that there should be a presumption of admissibility of evidence"). This presumption "recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Amorgianos*, 303 F.3d at 267. As the Supreme Court has noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

However, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266. Furthermore, "it is critical that an expert's analysis be reliable at every step." *Id.* at 267. Thus, while the court's focus is on the expert's principles and methodology, "conclusions and methodology are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Accordingly, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered," and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.*

### *2. Plaintiff's Additional Expert Affidavits*

13

First, Defendants contend that Plaintiff's additional affidavits submitted in opposition to Defendants' motion for summary judgment cannot be considered as they were filed after Plaintiff's expert disclosure deadline. *See* Dkt. No. 59 at 2-3. In support, Defendants cite *Prendergast v. Hobart Corp.*, which states

> [t]he Federal Rules require that any expert retained to testify at trial submit a report setting forth "a complete statement of all opinions the witness will express and the basis and reasons for them. Moreover, Rule 37(c)(1) provides that a party who fails to disclose information required by Rule 26(a), "is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless.

*Prendergast v. Hobart Corp.*, No. 04-CV-5134, 2010 WL 3199699, *5 (E.D.N.Y. Aug. 12, 2010) (quoting Fed. R. Civ. P. 37(c)(1)) (internal citations and quotations omitted). "A party must make these disclosures 'at the times and in the sequence that the court orders.'" *United States v. City of N.Y.*, 637 F. Supp. 2d 77, 106 (E.D.N.Y. 2009) (quoting Fed. R. Civ. P. 26(a)(2)(C)).

As Defendants note, Plaintiff's expert disclosures were due on April 30, 2014 and any rebuttal expert disclosures were due on June 27, 2014. *See* Dkt. No. 48. On July 25, 2014, discovery closed. *See id.* Thus, Plaintiff's additional expert affidavits, which were filed after the close of discovery, will not be considered. To the extent that Plaintiff's additional submissions have not changed Plaintiff's assertions in their original affidavits, it will not harm Plaintiff for the Court to solely consider the original and timely filed papers.

### *3. Dr. Rudolph Mortimer*

Defendants argue that the testimony of Plaintiff's expert, Dr. Rudolph Mortimer, should be precluded as "[it] only draw[s] broad conclusions without sufficient factual support." Dkt. No. 52-14 at 19. In their objection to Dr. Mortimer, Defendants state that "Dr. Mortimer did not inspect the accident scene, conduct any measurements, or provide any calculations related to his

statements." *Id.* However, Dr. Mortimer's original affidavit dated April 30, 2014, stated that although he may not have inspected the accident scene, he based his findings on the police report, the incident report, the police reconstruction, truck position reports, photos of the accident scene, and a vehicle examination report by the New York State Police – all of which could have provided sufficient data for Dr. Mortimer's findings. *See* Dkt. No. 58-19 at 2. Further, Defendants argue that Dr. Mortimer "doesn't even offer a conclusion, or explanation, as to *why* Ms. LaBarre would have been unable to avoid the collision after perceiving Mr. Ndungu's tractor trailer." Dkt. No. 52-14 at 20. However, upon review of Dr. Mortimer's declaration, it appears he directly addressed these concerns. For example, Dr. Mortimer notes that "Ms. LaBarre would not have been able to perceive the high relative speed between her auto and the semi of 50 mph or 35 mph, respectively, until she was about 456'-381' behind it, at which point there remained only about 6.2-7.4 seconds to impact." Dkt. No. 58-19 at ¶ 7. Dr. Mortimer goes on to state that,

> [o]n recognizing the hazard caused by the truck and her proximity to it, Ms. LaBarre would have experienced stress, creating additional delays in determining how to react that together could have easily consumed 4-5 seconds, or more. Additional time would be needed for Ms. LaBarre to respond by steering or braking, that can add another 2-4 seconds to reach maximum input. The SUV would then need additional time/distance to avoid the truck. Ms. LaBarre was also negotiating the curves in the road and also had another vehicle, driven by Bobbi Nelson, closing on her auto from behind that would have taken up some of her attention, causing further delay in responding to the semi.

Dkt. No. 58-19 at ¶ 8. Finally, Defendants argue that Dr. Mortimer "fail[ed] to explain how the lights may have increased the visibility of Mr. Ndungu's trailer and the specific impact that would have had on Ms. LaBarre's reaction time." Dkt. No. 52-14 at 20. However, Dr. Mortimer states that as Plaintiff's Decedent was given no warning of Defendant Ndungu's slow moving vehicle through hazard or flashing lights, she was left to rely solely on her visual estimation of Defendant

15

Ndungu's speed. *See* Dkt. No. 58-19 at ¶¶ 2, 7, 9. The Court notes that a trier of fact does not need expert testimony in order to consider whether the presence of operable hazard lights would indicate to a driver that a vehicle was moving at a slower rate of speed. This is precisely the kind of testimony which requires a jury to determine its weight, rather than a question of law regarding admissibility. The motion to preclude Dr. Mortimer's expert testimony is denied.

### *4. Kevin Murphy*

Defendants also move to preclude Plaintiff's expert, Kevin Murphy, Senior Investigator with the Town of Amherst Police Department. *See* Dkt. No. 52-14 at 20. Defendants argue that Mr. Murphy "fails to provide sufficient data and analysis to support his conclusions." *Id.* Although the court may exclude an expert opinion "that is connected to existing data only by the *ipse dixit* of the expert," *Gen. Elec. Co.*, 522 U.S. at 146, that is not the case here. First, Defendants argue that Mr. Murphy "fails to explain specifically how [an air leak] was a proximate cause of the collision." Dkt. No. 52-14 at 20-21. However, Mr. Murphy's affidavit states that "[b]y not pulling over to the side of the road immediately when the air leak started, Ndungu was negligent and in violation of 49 CFR 396.7, which forbids unsafe operation of a motor vehicle and states that a 'motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle.'" Dkt. No. 52-8 at 60-61. Further, Defendant Ndungu was ticketed for violating New York State Vehicle and Traffic Law §1181(a) and traveling "at such a slow speed as to impede the normal and reasonable movement of traffic."[2] *See id.* at 50; *see also* N.Y. VTL § 1181(a). As previously mentioned in *Seaton*, a lead vehicle traveling at a

---

[2] Defendants note that Defendant Ndungu was not convicted of this violation. *See* Dkt. No. 59 at 4. However, they fail to cite to any supporting documents to verify this assertion.

dangerously slow speed may in fact be a proximate cause of a rear end collision. *See Seaton*, 30 Cal. Rptr. at 513.

Additionally, Defendants note that Mr. Murphy "offered no analysis regarding how the flashers would impact the trailer's visibility, what impact it would have on Ms. LaBarre's awareness of the tractor trailer's speed, and whether the flashers would have alerted Ms. LaBarre's perception and actions." Dkt. No. 52-14 at 21. The Court notes that, as with Defendants' arguments regarding Dr. Mortimer's testimony, the jury does not need to be presented with expert testimony to consider if and/or how flashers would impact the tractor trailer's visibility and a following driver's awareness of that vehicle since such information is within their common knowledge.

Finally, Defendants cite *Hersman v. Hadley* and *Bisceglia v. IBM*, noting that "[Mr. Murphy] essentially offers a 'but for' opinion that if Mr. Ndungu was not on the roadway, the accident wouldn't have happened. Such 'but for' opinions are routinely rejected in New York Courts." *See id.* (citing *Bisceglia v. IBM*, 287 A.D.2d 674, 675 (2d Dep't 2001); *see also Hersman v. Hadley*, 235 A.D.2d 714, 718 (3d Dep't 1997)). However, the defendants in both *Hersman* and *Bisceglia* were third parties who owned the property where the accidents occurred and were not present or involved in the vehicle collisions. *See Bisceglia*, 287 A.D.2d at 675; *see also Hersman*, 235 A.D.2d at 715. Certainly the court's rejection of "but for" opinions does not extend to the alleged negligent actions of one of the two vehicles involved in a collision.

Accordingly, the Court denies Defendants' motion to preclude Mr. Murphy's testimony.

### *5. Sulev Oun*

Finally, Defendants move to preclude Plaintiff's expert, Sulev Oun, owner of O&K Truck Repairs, Ltd. *See* Dkt. No. 52-14 at 21. Similar to the arguments to preclude Mr. Murphy's

17

testimony, Defendants argue that "Mr. Oun's conclusions lack any evidence as to how the purported air leak and flashers were a proximate cause of the accident." Dkt. No. 52-14 at 22. Defendants argue that "even if Mr. Ndungu was in violation of trucking rules, it was not a proximate cause of the accident and merely would have furnished an occasion for the occurrence of the event." *Id.* As noted above, these arguments do not go to the admissibility of the evidence, but instead to their weight and are therefore within the purview of the trier of fact.

Accordingly, the Court denies Defendants' motion to preclude Mr. Oun's testimony.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to preclude Plaintiff's experts is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 5, 2015
       Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge