UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANK G. LaBARRE, as Executor
of the Estate of ROSLYN L. LaBARRE,
Deceased, and FRANK G. LaBARRE, individually,

                                   **Plaintiff,**

    vs.                                        1:12-CV-1316
                                                  (MAD)
WERNER ENTERPRISES, INC., and
FESTUS KIMOTHO NDUNGU,
                              **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**O'CONNELL AND ARONOWITZ, P.C.**       **STEPHEN R. COFFEY, ESQ.**
54 State Street                              **CRISTINA D. COMMISSO, ESQ.**
9th Floor                                        **SCOTT W. ISEMAN, ESQ.**
Albany, New York 12207-2501              **PAMELA A. NICHOLS, ESQ.**
Attorneys for Plaintiff

**CARTER, CONBOY, CASE, BLACKMORE,**   **WILLIAM J. DECAIRE, ESQ.**
**MALONEY & LAIRD, P.C.**                **BRIAN D. CARR, ESQ.**
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 22, 2012, Plaintiff Frank G. LaBarre commenced this action in the Federal

District Court for the Northern District of New York, pursuant to 42 U.S.C. § 1332. *See* Dkt. No.

1 at ¶ 11. In the complaint, Plaintiff asserts that the negligence of Werner Enterprises, Inc., and

Festus Kimotho Ndungu ("Defendants") caused the death of his wife, Roslyn L. LaBarre

("Plaintiff's Decedent"). *See id.* at ¶¶ 29, 49, 59. Currently before the Court are the parties motions *in limine*. *See* Dkt. Nos. 76, 80.

## II. DISCUSSION

### A. Standard of Review

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.,* No. 94–cv–5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998) (citation omitted). Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Alternatively, the court is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41–42.

### B. Defendants' Motion *in Limine*

#### *1. Plaintiff's Expert Declarations*

The discovery order in this case directed Plaintiff to file his expert disclosure pursuant to rule 26(a) of the Federal Rules of Civil Procedure ("rule 26(a)") by April 30, 2014 and any rebuttal expert disclosure by June 27, 2014. *See* Dkt. No. 48. Plaintiff served disclosure pursuant to rule 26(a) dated May 1, 2014. *See* Dkt. No. 76-4. No rebuttal expert disclosure was served by Plaintiff. Discovery was closed on July 25, 2014. *See* Dkt. No. 48. Thereafter, Defendants moved for summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure and, in

opposition, Plaintiff submitted declarations from the following experts: Rudolf Mortimer, Kevin Murphy, and Sulev Oun. *See* Dkt. Nos. 58-17, 58-20, 58-21. Defendants argued on that motion that the expert declarations should not be considered to the extent there is information or opinions that had not previously been disclosed in Plaintiff's rule 26(a) disclosure, and the Court agreed. *See* Dkt. No. 61 at 14.

Defendants now move *in limine* to preclude Plaintiff from offering any information or opinions contained within those declarations to the extent that the information is beyond what has been disclosed pursuant to rule 26(a) of the Federal Rules of Evidence. *See* Dkt. No. 76-9 at 2-9. Consistent with this Court's previous decision on Defendants' dispositive motion, the Court holds that, any opinions of Plaintiff's experts not timely disclosed pursuant to rule 26(a) will be precluded from trial. Rule 26(a)(2)(B)(i) requires that the disclosure of expert testimony must include "a complete statement of all opinions the witness will express and the basis and reasons for them." Rule 37(c)(1) of the Federal Rules of Civil Procedure ("Rule 37(c)(1)") states that if a disclosure pursuant to rule 26(a) does not provide information, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

The Court has discretion in applying rule 37(c)(1) to preclude evidence. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). When the Second Circuit reviews a district court's determination under rule 37 for an abuse of discretion, the following factors are considered:

> "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."

3

*Design Strategy*, 469 F.3d at 296 (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

Here, Defendants have raised several statements or opinions of Dr. Mortimer that they seek to preclude, which include new calculations of distances traveled, new and additional reaction times of Plaintiff's decedent, and new conclusory opinions. *See* Dkt. No. 76-9 at 3-6. In the rule 26(a)(2)(B)(i) disclosure, Dr. Mortimer opined that Plaintiff's decedent was traveling at 65 miles per hour and Defendant Ndungu was traveling in the range of 15 to 30 miles per hour. *See* Dkt. No. 76-4 at 7. Dr. Mortimer also opined that Plaintiff's decedent would not have been able to perceive the difference in speed between her vehicle and Defendant Ndungu's vehicle until she was approximately 456 feet to 381 feet away at which point there remained approximately 6.2 to 7.4 seconds to impact. *See* Dkt. No. 76-4 at 7. The Court finds that any additional calculations of the distances between the parties' vehicles based upon these same rates of speed are not new opinions but are derived from Dr. Mortimer's previously disclosed calculations. Although a complete table or diagram of time and locations of the vehicles was not provided by Dr. Mortimer, the Court finds that any failure to disclose is harmless where the rates of speed and location references were previously disclosed and consistent.

However, Dr. Mortimer's new opinion that Plaintiff's decedent would have required two to four seconds to a make a decision to either steer, brake, or check her mirror and then an additional 0.5 seconds to move the steering wheel or to brake, *see* Dkt. No. 76-6 at 7, is new and a different opinion from his disclosure where he states that she would need two to four seconds to respond by steering or braking, *see* Dkt. No. 76-4 at 8. Because the reaction time of the parties and position of their vehicles is essential to both parties' cases, the Court rules that Dr. Mortimer is precluded from offering this alteration in his opinion and any derived conclusions from the altered

4

reaction time.  Likewise, Dr. Mortimer provides additional and new opinions about how long Plaintiff's decedent would need to reduce her speed to that of Defendant Ndungu's vehicle or to negotiate a lane change.  *See* Dkt. No. 76-6 at 8.  This information is not contained within his expert report, and the Court rules that he is precluded from testifying on this information.

In his declaration, Dr. Mortimer also offers his opinions that (1) Plaintiff's decedent could not reasonably be expected to avoid Defendants' vehicle because it was an atypical, stress-inducing situation and (2) it was reasonably foreseeable that Plaintiff's decedent was unable to avoid colliding with Defendants' trailer.  *See* Dkt. No. 76-6 at 8.  These opinions were not previously disclosed by Plaintiff, and these opinions are not a mere expansion of Dr. Mortimer's disclosed opinions.[1]  The Court finds that Dr. Mortimer's opinions that the accident was reasonably foreseeable and that Plaintiff's decedent could not reasonably have be expected to avoid a collision are new opinions.  Defendants did not have notice of these new opinions based upon previously disclosed opinions.  The Court finds that their omission from Dr. Mortimer's exert report was not harmless.

Defendants also argue that Kevin Murphy's opinion in his declaration varies significantly from his rule 26(a)(2)(B)(i) disclosure.  *See* Dkt. No. 76-9 at 7-8.  Specifically, Defendants focus on Mr. Murphy's disclosed opinion that operating a truck on the shoulder of the road, even with operating flasher lights, would be potentially dangerous.  *See id.*  Defendants compare this to his declaration, which states that Defendant Ndungu should have immediately parked his vehicle on the shoulder of the road, put out emergency triangles, activated his flashers, and requested repairs.

---

[1] The Court also finds that both of these statements are legal conclusions and not factual conclusions because Dr. Mortimer is not providing opinions from which the jury can derive inferences but is stating the ultimate conclusion on what was reasonable and reasonably foreseeable.  *See United States v. Duncan*, 42 F.3d 97, 102-03 (2d Cir. 1994).  Therefore, even if Defendants had notice of these opinions, the Court would preclude them as legal conclusions.

5

*See* Dkt. No. 76-6 at 62. Mr. Murphy also opined in the declaration that the roadway had sufficient space for Defendant Ndungu to stop his vehicle because the shoulder width of the road was approximately fourteen feet. *See id.* Defendants argue that this opinion is contradictory to the disclosed opinion and based upon new facts. *See* Dkt. No. 76-9 at 7-8. The Court does not agree. The shoulder width of the road was contained within the state police report, *see* Dkt. No. 80-1 at 5, and Mr. Murphy identified the state police investigation file and his investigation of the crash site as a basis for his opinion, *see* Dkt. No. 76-4 at 47. Also, Mr. Murphy's opinion that *operating* a vehicle on the shoulder is potentially dangerous is not in contradiction of his opinion that Defendant Ndungu should have *parked* his vehicle on the shoulder when there was a pressure leak. This precise opinion is contained within Mr. Murphy's expert report. *See* Dkt. No. 76-4 at 60. The court rules that Mr. Murphy is not precluded from offering his opinion that Defendant Ndungu should have pulled off the road and parked on the shoulder while calling for assistance.

As stated above, Plaintiff did not serve any expert disclosure in rebuttal to Defendant's expert disclosure. The Court reserves on Defendants' motion *in limine* to preclude any rebuttal testimony because specific rebuttal opinions have not been identified in the motion. At the time of trial, Defendants may raise their specific objection to the testimony being offered. Any other objections to new expert opinions not timely disclosed should also be raised at the time the evidence is being offered.

### *2. Inadequate Lighting, Slow Speed, and Mechanical Defect*

Defendants argue that Plaintiff should be precluded from offering evidence that (1) the trailer lights on Defendants' vehicle were not operating, (2) Defendant Ndungu was driving at a slow speed, and (3) Defendants' vehicle had a mechanical failure causing the slow speed. *See* Dkt. No. 76-9 at 15-16. Defendants argue that evidence about the absence trailer lights (flashers

6

and brake lights) and the slow speed of a leading vehicle have been held insufficient to rebut the presumption of negligence of the rear driver in rear-end collisions. For this reason, this evidence has been rendered not probative and outweighed by its prejudice, according to Defendants. *See* Dkt. No. 76-9 at 9-16. The Court disagrees.

"It is well established that when a driver approaches another vehicle from the rear, he is bound to maintain a reasonably safe rate of speed, maintain control of his vehicle, and use reasonable care to avoid colliding with the other vehicle." *Barile v. Lazzarini*, 222 A.D.2d 635, 637 (2d Dep't 1995) (citation omitted). "Under New York law, a rear-end collision establishes a *prima facie* case of liability against the following vehicle, thereby requiring the [driver of the following vehicle] to rebut the inference of negligence with a nonnegligent explanation for the collision." *Mangual v. Pleas*, No. 02 CIV. 8311, 2004 WL 736817, *4 (S.D.N.Y. Apr. 6, 2004) (citation omitted). Evidence of a non-negligent explanation can include mechanical failure, unavoidable skidding on wet pavement, sudden stop of the front vehicle, or "any other reasonable explanation." *Id.*; *see also Brown v. Brenes*, No. 99 Civ. 4922, 2001 WL 262683, *2 (S.D.N.Y. Mar. 15, 2001).

This Court has already determined that, if Plaintiff establishes that Defendant Ndungu continued to drive at a slow speed in a travel lane of an interstate highway without functioning trailer lights and with a mechanical defect that prevented the vehicle from traveling at a greater speed, then Plaintiff will be able to rebut the presumption of negligence. *See LaBarre v. Werner Enters., Inc.*, No. 1:12-CV-1316, 2015 WL 4649285 (N.D.N.Y. Aug. 5, 2015). Plaintiff has served an expert disclosure indicating that approaching vehicles, under these circumstances, would not be able to perceive the difference in the leading vehicle's speed until it was within 456 feet to 381 feet. *See* Dkt. No. 76-4 at 7. Defendants' argument that evidence of the mechanical

defect, absence of trailer lights, and slow speed are legally insufficient to rebut the presumption of negligence has already been rejected by this Court. *See LaBarre*, 2015 WL 4649285, at *3-4 (holding Plaintiff provided sufficient evidence to raise questions of fact to rebut the inference of negligence). The Court finds that this evidence is both relevant to, and highly probative of, Defendants' alleged negligence.

"Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 [of the Federal Rules of Evidence] the prejudice must be *unfair*." *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174 (2d Cir. 2000). "The unfairness contemplated involves some adverse effect beyond tending to prove a fact or issue that justifies admission." *Id.* at 174-75 (citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997)). Here, any prejudice to Defendants in admitting the evidence at issue relates directly to proving or disproving Defendants' allege negligence. Accordingly, the prejudice is not unfair. The Court denies Defendants' motion.

### 3. Violations of Werner's Driver Handbook

Defendants move to preclude evidence of alleged violations of Defendant Werner's driver handbook. *See* Dkt. No. 76-9 at 17-18. Defendants argue that the handbook contains internal standards and practices that exceed the ordinary standard of care. *See id.* Without any foundation or context, the Court is unable to determine admissibility and relevancy and reserves on this motion. It should be noted, however, that "[t]he question of whether and to what extent [a defendant's] adherence (or lack thereof) to its own internal rules and policies is relevant and admissible is not necessarily staightforward." *Hananburgh v. Metro-North Commuter R.R.*, No. 13-CV-2799, 2015 WL 1267145, *7 (S.D.N.Y. Mar. 18, 2015). Although an internal policy may

8

not establish the applicable standard of care, the "internal rules are relevant to determining what constitutes due care." *In re City of New York*, 475 F. Supp. 2d 235, 240-41 (E.D.N.Y. 2007).

### *4. Post-mortem Photographs of Plaintiff's Decedent*

Plaintiff has stated that he does not intend to introduce the "gruesome photos of the decedent." Accordingly, Defendants' motion is denied without prejudice.

### *5. Defendant Ndungu's Traffic Citations*

At the time of the accident, Defendant Ndungu was cited for violating the following sections of New York Vehicle and Traffic Law ("VTL"): 375(1) for inadequate brakes, 375(18-a) for inadequate hazard lights, and section 1181(a) for driving too slowly. Defendant Ndungu was also cited, and subsequently pleaded guilty to, violation of New York Transportation Law § 211 for a logbook violation. *See* Dkt. No. 89-7. Defendant Ndungu also pleaded guilty to section 1201(a) of the New York Vehicle and Traffic Law (parking on a highway) in satisfaction of charged violation of section 1181(a). *See id.* There was no determination that Defendant Ndungu violated any section of the VTL that he was cited for. *See id.* Defendants seek to preclude evidence of all traffic citations under rule 402 of the Federal Rules of Evidence ("rule 402"). *See* Dkt. No. 76-9 at 21-22.

With regard to the VTL citations, the Court agrees with Defendants. Even assuming that these traffic citations are admissible facts through the police report, the Court finds that the prejudice substantially outweighs their probative value. First, it should be noted that the unproven traffic violations do not qualify as "other acts" under rule 404(b), which permits character evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence or mistake, or lack of accident". *See Stephen v. Hanley*, No. 03-CV-6226, 2009 WL 1471180, *7 (E.D.N.Y. May 21, 2009) (citing *United States v. Fama*, 38 Fed. Appx. 70, 73 (2d

9

Cir. 2002) (citing *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000))) (stating that the admissibility of such evidence needs to be reviewed under rule 403 of the Federal Rules of Evidence).

As stated above, the jury will be permitted to hear evidence of the underlying conduct for each of these traffic citations, i.e., driving too slowly, inadequate brakes, and inadequate hazard lights. Plaintiff will be able to question Defendant Ndungu about his speed, any mechanical failure of his vehicle, and the operation of the trailer lights. However, the issued citations offer little probative value where there was no determination that Defendant Ndungu was guilty of the violations. The Court finds that the introduction of the unproven traffic citations, which are inextricably intertwined with the incident giving rise to this lawsuit, "has the potential to prejudice the jury's perception of the facts at issue." *Id.* at *7 (stating that there is a danger that the jury will attach the same weight to the *charge* as they would a *conviction*).

With regard to Defendant Ndungu misdemeanor conviction under section 211 of New York Transportation Law for driving in excess of the regulation time limits, the Court reserves on the Defendants' motion to preclude until the time of trial where the relevance and probative value can be evaluated in the context of the evidence presented. However, the Court notes that it is not persuaded by Defendant's attempt to couch the admissibility of the conviction in terms of impeachment pursuant to rule 609 of the Federal Rules of Evidence. *See* Dkt. No. 76-9 at 23-25. Plaintiff is clear in his opposition papers that Defendant Ndungu's misdemeanor conviction is being offered as evidence in chief to support their theories of Defendants' negligence. *See* Dkt. No. 33-34.

The evidence of Defendant Ndungu's guilty plea may be admissible under rule 801(d) of the Federal Rules of Evidence ("rule 801(d)").

> Rule 801(d)(2) provides that an opposing parties statement is not hearsay if it is offered against the opposing party and "was made by the party in an individual or representative capacity." FED. R. EVID. 801(d)(2)(A). "Generally, when a guilty plea to a criminal charge is admitted in a subsequent civil action, it is under the auspices of an admission by a party-opponent."

*Dudley v. Holmes*, No. 9:12-cv-00429, 2014 WL 2772901, *2 (N.D.N.Y. June 19, 2014) (quoting *Fed. Ins. Co. v. Edenbaum*, No. 12-cv-410, 2012 WL 2803739, *2 (D.Md. July 9, 2012)). While the guilty plea is excluded from hearsay, "it is still subject to Rule 403." *See id.* In this case, the Court finds that it is inappropriate to rule on admissibility where the balancing of the rule 403 considerations is a "task better left to trial." *Id.* at *3.

### 6. *Fringe Benefits*

Defendants seek to preclude evidence of Plaintiff's loss of fringe benefits. *See* Dkt. No. 76-9 at 25-27. The Court finds that the disclosure of Plaintiff's economist on May 1, 2014 provided sufficient notice to Defendants that Plaintiff was seeking these damages. *See* Dkt. No. 76-4. Moreover, Plaintiff has shown that Defendants had notice that Plaintiff was claiming this loss as early as August 30, 2013. *See* Dkt. No. 89-8 at 1. The Court finds that any failure by Plaintiff to formally supplement or amend his interrogatories was harmless under these circumstances.

### 7. *Nonpecuniary Loss*

Defendants seek to preclude any evidence of nonpecuniary losses suffered by Plaintiff's decedent's surviving relatives. *See* Dkt. No. 76-9 at 28-32. Plaintiff concedes that the children of Plaintiff's decedent are not entitled to recover nonpecuniary damages and agrees to an order precluding testimony about these damages at trial. *See* Dkt. No. 90 at 37-38. However, Plaintiff argues that he is entitled to present evidence of his nonpecuniary losses, including loss of consortium for a period of time prior to Plaintiff's decedent's death. *See id.*

11

New York common law does not recognize causes of action to recover damages for the wrongful death separate from the statutory cause of action accorded to a decedent's distributees. *See* N.Y. E.P.T.L. § 5-4.1; *Liff v. Schildkrout*, 49 N.Y.2d 622, 631-32 (1980). The surviving spouse, in his individual capacity, does not have a claim for loss of consortium due to his spouse's death. *See id.* at 631. The phrase "loss of consortium" generally refers to grief, loss of society, affection, and conjugal fellowship. *See Ruiz v. New York City Health & Hosps. Corp.*, 165 A.D.2d 75, 80 (1st Dep't 1991) (quoting *Liff*, 49 N.Y.2d at 633). The surviving spouse can recover for loss of consortium for the period prior to decedent's death, which is a derivative action of the decedent's conscious pain and suffering. *See Liff*, 49 N.Y. at 632. A claim for loss of consortium during the period of time of a decedent's conscious pain and suffering up until the time of her death is recoverable by a surviving spouse. *See LaMarca v. United States*, 31 F. Supp. 2d 110, 132 (E.D.N.Y. 1999).

Although it is a legal possibility, the Court thinks that, in this case, it was practically impossible for Plaintiff to have any loss of consortium where he was not aware of the accident or his wife's injuries until after her death. The Court is pressed to articulate what loss of society, affection, assistance, companionship, services, or sexual relations could have been lost in the minutes of survival before death. However, the loss of consortium claim is a derivative cause of action and "its viability is dependent on the viability of a primary cause of action." *See Dockery v. United States*, 663 F. Supp. 2d 111, 125 (N.D.N.Y. 2009). If Plaintiff is able to establish that his spouse suffered any conscious pain and suffering before her death, then he too is able to legally state a derivative cause of action no matter how short the interval of time may be. *See Walden v. Coleman*, 105 Ga. App. 242, 243 (Div. No. 2 1962). The Court reserves on Defendants' motion to preclude to Plaintiff from introducing non-pecuniary loss of society.

**C.     Plaintiff's Motion** *in Limine*

*1. State Police Conclusions and Findings*

Plaintiff seeks to preclude Investigator Bruce R. McLaughlin's ("Investigator McLaughlin") conclusions and findings contained within the New York State Police report entitled "Three Vehicle Fatal Collision" (the "report"). *See* Dkt. No. 80 at 3-6.  After completing his investigation of the accident and documenting this investigation in at twenty-seven page report, Investigator McLaughlin reports his conclusions and findings as follows:

> The primary cause(s) of this collision included driver inattention on the part of Vehicle #2 operator Roslyn Labarre and following too closely on the part of Vehicle #3 operator Bobbi Jo Nelson with a contributing factor of driving at a reduced speed with no operating trailer lights on the part of Vehicle #1 operator Festus Ndungu.

Dkt. No. 80-1 at 22.  Plaintiff contends that this statement is not admissible because his conclusion does not indicate trustworthiness.  *See* Dkt. No. 80 at 3.  Initially, Defendants argue that Plaintiff's motion in untimely.  *See* Dkt. No. 87-4 at 4.  The Court agrees that Plaintiff did not timely file his motion to preclude Investigator McLaughlin's conclusions and findings because he was disclosed by Defendants as an expert witness.  *See* Dkt. No. 76-5 at 3-4.  However, the Court will address the merits of Plaintiff's motion.

Rule 803 of the Federal Rules of Evidence ("rule 803") provides exceptions to the rule against hearsay.  Plaintiff argues that Investigator McLaughlin's conclusions and findings do not qualify under the public records exception under rule 803(8) because (1) legal conclusions are inadmissible and (2) the conclusions are not trustworthy.  Defendant argues that the conclusions and findings qualify under both rule 803(6), a business record, and 803(8).  *See* Dkt. No. 87-45 at 2. Whether the report is a business record or a public record, both exceptions contain a provision that the record does not fall within the exception if the opponent shows that the source of the

13

information lacks trustworthiness. *See* FED. R. EVID. 803(6), (8). Plaintiff bears the burden of showing unreliability. *See Miranda-Ortiz v. Deming,* No. 94 CIV 476, 1998 WL 765161, *2 (S.D.N.Y. Oct. 29, 1998).

Addressing first Plaintiff's contention that the conclusions and findings are inadmissible legal conclusions, the Court disagrees. Plaintiff is correct that legal conclusions should not be admissible under rule 803(8), *see Miranda-Ortiz*, 1998 WL 765161, at *1 (finding that the general consensus of the circuits is that legal conclusions are not admissible), but investigatory reports are "not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988); *see also* FED. R. EVID. 702 (stating that "[a]n opinion is not objectionable just because it embraces an ultimate issue").

"Often the distinction between fact and legal conclusion is blurred." *See Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 480 (N.D.N.Y. 2004). However, "it is axiomatic that an expert is not permitted to provide legal opinions, legal conclusions, or interpret legal terms; those roles fall soley within the province of the court." *See id.* In this case, Investigator McLaughlin does not state a legal conclusion or provide a legal opinion but, instead, provides his conclusions and findings based upon his investigation as to the cause of the motor vehicle accident, which is the purpose of the investigation. The legal opinions and conclusions on the parties' negligence or contributory negligence were not offered within the report. Where an investigator's report contains statements that are "given not simply as an expert, but also as a witness to the investigation," conclusions are permitted to explain the direction of the investigation and in providing the answers sought by the police investigation. *United States v.*

*Schwartz*, 924 F.2d 410, 426 (2d Cir. 1991). It should be noted that Investigator McLaughlin did not find that Plaintiff's decedent was *distracted*, as characterized by Plaintiff, but found that the accident was caused, in part, by driver inattention. See Dkt. No. 80-1 at 27.

Next, addressing Plaintiff's contention that the report's conclusions and findings are not trustworthy because there is no factual support that Plaintiff's decedent was inattentive at the time of the collision. *See* Dkt. No. 80 at 6-15. Plaintiff claims that Investigator McLaughlin's bases for finding Plaintiff's decedent to be inattentive is the suggestion she may have had cereal in the car and getting an "aspirin." *See* Dkt. No. 80 at 6-13. According to Plaintiff, evidence of these two facts should be precluded and are unreliable. *See id.* The Court disagrees with Plaintiff's reading of the report. Investigator McLaughlin's conclusions are based upon his investigation into the facts and permissible inferences based upon those facts. There is not a reference to cereal or aspirin in Investigator McLaughlin's conclusions and findings. The reliability of Investigator McLaughlin's investigation, findings of facts, and conclusions are subject to cross examination at trial and are not for preclusion. *See Lidle ex rel. Lidle v. Cirrus Design Corp.*, No. 08 Cv. 1253, 2010 WL 2674584, *9 (S.D.N.Y. July 6, 2010).

With regard to Plaintiff's motion to preclude evidence of Plaintiff's statement to police officers that his "wife sometimes takes cereal on road w/ milk – only two phones could put makeup on in car – drank tea," *see* Dkt. No. 80-2 at 1, and evidence of a possible aspirin, *see* Dkt. No. 80 at 9, the Court reserves. "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *See Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294, 2003 WL 21998985, *2 (S.D.N.Y. Aug. 22, 20003). A ruling on the admissibility of this evidence is better made when it is offered in "the appropriate factual context." *Id.*

### *2. Prior Motor Vehicle Accident*

Plaintiff seeks to preclude Defendants from introducing evidence of a prior motor vehicle accident of Plaintiff's decedent. *See* Dkt. No. 80 at 14-15. The Court grants Plaintiff's motion because the prior accident is not relevant to this action. Defendants argue that evidence of the accident could become admissible if Plaintiff opens the door. *See* Dkt. No. 87-4 at 11-13. This Court's rulings *in limine* are always "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [] proffer." *Luce*, 469 U.S. 38, 41 (1984) ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

### *3. Video Animation*

Plaintiff contends that the video animation by Defendants' expert, Dr. Mark Lee Edwards, should be precluded because it is not a fair and accurate depiction of the accident. *See* Dkt. No. 80 at 16-18. The Court reserves on this motion until such time that the video is offered into evidence. A ruling on whether the video accurately depicts that accident is better made within the factual context of the evidence at trial.

## III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion *in limine* regarding expert testimony not timely disclosed (Dkt. No. 76-9) is **DENIED in part** and **GRANTED in part**; and the Court further

**ORDERS** that Defendants' motion *in limine* regarding the inadequate lighting, slow speed, and mechanical defect of Defendants' vehicle (Dkt. No. 76-9) is **DENIED**; and the Court further

**ORDERS** that Defendants' motion *in limine* regarding evidence of violations of Defendant Werner's driver handbook (Dkt. No. 76-9) is **RESERVED**; and the Court further

**ORDERS** that Defendants' motion *in limine* regarding the photographs of Plaintiff's decedent post-mortem (Dkt. No. 76-9) is **DENIED without prejudice**; and the Court further

**ORDERS** that Defendants' motion *in limine* regarding Defendant Ndungu's traffic citations (Dkt. No. 76-9) is **GRANTED in part** and **RESERVED in part**; and the Court further

**ORDERS** that Defendants' motion *in limine* regarding the loss of fringe benefits (Dkt. No. 76-9) is **DENIED**; and the Court further

**ORDERS** that Defendants' motion *in limine* regarding non-pecuniary loss of the Plaintiff's decedent's distributees (Dkt. No. 76-9) is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion *in limine* regarding the non-pecuniary loss of Plaintiff (Dkt. No. 76-9) is **RESERVED**; and the Court further

**ORDERS** that Plaintiff's motion *in limine* regarding Investigator McLaughlin's conclusions and finding contained in the police report (Dkt. No. 80) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion *in limine* regarding evidence of eating cereal, putting on makeup, drinking tea, or taking medication while Plaintiff's decedent was driving (Dkt. No. 80) is **RESERVED**; and the Court further

**ORDERS** that Plaintiff's motion *in limine* regarding a prior motor vehicle accident involving Plaintiff's decedent (Dkt. No. 80) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion *in limine* regarding video animation of the accident (Dkt. No. 80) is **RESERVED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 4, 2015
      Albany, New York

*Mae A. D'Agostino*
U.S. District Judge